UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DK LIPA, LLC,

                          Case No.: 20-cv-04273 (LGS) (DCF)

                Plaintiff,

  - against -

MISF Solar LLC, Project NY LLC, Mastic Industrial
Solar LLC, Gerald Rosengarten, Howard
Rosengarten, Sion Sohayegh, Bijoun Kaypour, Artur
Madej, Thomas Falz, Ulrich Falz, and Markus Falz,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' CONSOLIDATED MOTION TO DISMISS

---


FARRELL FRITZ, P.C.
*Attorneys for Defendants*
*Project NY, LLC, Thomas Falz,*
*Ulrich Falz, and Markus Falz*
400 RXR Plaza
Uniondale, New York 11556
(516) 227-0700

GANFER SHORE LEEDS & ZAUDERER LLP
*Attorneys for Defendant MISF Solar, LLC*
360 Lexington Avenue
New York, New York 10017
(212) 922-9250

LOUIS FOGEL & ASSOCIATES
*Attorneys for Defendants Mastic*
*Industrial Solar, LLC, Gerald*
*Rosengarten, Howard Rosengarten,*
*Sion Sohayegh and Bijoun Kaypor*
75 Wall Street, Suite 33-A
New York, New York 10005
(212) 944-1580

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 6

A.  The Right of First Offer Agreement ................................................................ 6

B.  The Letter of Intent and Joint Venture ........................................................... 7

C.  The 2019 Action ............................................................................................. 7

D.  The 2020 Action ............................................................................................. 7

ARGUMENT ............................................................................................................... 8

POINT I

AS A THRESHOLD MATTER, THE 2019 ACTION MOOTS THE 2020 ACTION AS
AGAINST ALL DEFENDANTS, REGARDLESS OF HOW THE 2019 ACTION IS
RESOLVED .................................................................................................................. 8

POINT II

THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE A CLAIM AGAINST ALL
DEFENDANTS FOR TORTIOUS INTERFERENCE WITH CONTRACT ................ 10

A.  The Complaint Fails to Allege Defendants Were the "But For" Cause of SBE's
Alleged Breach of the ROFO Agreement ..................................................... 11

B.  The Complaint Fails to Meet the Heightened Pleading Standard Required to
Plausibly Allege a Tortious Interference Claim Against the Falz Defendants,
Officers and/or Managers of SBE .................................................................. 12

C.  The Complaint Fails To State A Tortious Interference Claim Against the
Individual Mastic Defendants ....................................................................... 14

POINT III

THE COMPLAINT FAILS TO ALLEGE A BREACH OF CONTRACT CLAIM
AGAINST THE FALZ DEFENDANTS BASED ON AN ALTER EGO THEORY ....... 15

i

POINT IV

DK LIPA FAILS TO PLAUSIBLY ALLEGE A CLAIM AS AGAINST ALL
DEFENDANTS FOR UNLAWFUL TRANSFER PURSUANT TO NEW YORK
DEBTOR CREDITOR LAW ............................................................................................17

A.  The Third Claim for Relief Is Not Actionable Against the Falz Defendants or
    the Mastic Defendants.................................................................................................18

B.  The Complaint Fails to Plausibly Allege a Claim Against All Defendants for
    Actual Fraudulent Conveyance Under DCL § 276.......................................................19

C.  DK LIPA's Constructive Fraud Claims Under DCL §§ 273, 274, and 275
    Are Inadequately Pleaded As Against All Defendants ................................................23

CONCLUSION.................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&M Global Mgmt. Corp. v. Northtown Urology Assoc., P.C.*,
    115 A.D.3d 1283 (4th Dep't 2014) ...................................................................................20

*ACLI Gov't Sec., Inc. v. Rhoades*,
    653 F. Supp. 1388 (S.D.N.Y. 1987) .................................................................................20

*In re Actrade Financial Technologies Ltd.*,
    337 B.R. 791 (S.D.N.Y. 2005) .....................................................................................20, 22

*In re Adler*,
    372 B.R. 572 (E.D.N.Y. 2007) .........................................................................................22

*Advantage Int'l Mgmt., Inc. v. Martinez*,
    1994 U.S. Dist. LEXIS 12535, 1994 WL 482114 (S.D.N.Y. Sept. 7, 1994) .....................10

*In re Amaranth Nat. Gas Commodities Litig.*,
    612 F. Supp. 2d 376 (S.D.N.Y. 2009), *aff'd*, 730 F.3d 170 (2d Cir. 2013) .....................16

*Argus Media, Ltd. v. Tradition Fin. Servs.*,
    2009 U.S. Dist. LEXIS 120866, 2009 WL 5125113 (S.D.N.Y. Dec. 29, 2009) ...............10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................................................8

*Atlanta Shipping Corp. v. Chem. Bank*,
    818 F.2d 240 (2d Cir. 1987) ..............................................................................................19

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...........................................................................................................8

*Black Car and Livery Ins., Inc. v. H&W Brokerage, Inc.*,
    28 A.D.3d 595 (2d Dep't 2006) .........................................................................................10

*Bonacasa Realty Co., LLC v Salvatore*,
    109 A.D.3d 946 (2d Dep't 2013) .......................................................................................16

*Capmark Fin. Group Inc. v. Goldman Sachs Credit Partners, L.P.*,
    491 B.R. 335 (S.D.N.Y. 2013) ..........................................................................................16

*Cargo Partner AG v. Albatrans, Inc.*,
    207 F. Supp. 2d 86 (S.D.N.Y. 2002) ................................................................................19

*Colo. River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976)......................................................................................................9

*Credicom N.V. v. Colony Credicom L.P.*,
2000 U.S. Dist. LEXIS 2916, 2000 WL 282968 (S.D.N.Y. Mar. 16, 2000) ...........................10

*Curtis v. Citibank, N.A.*,
226 F.3d 133 (S.D.N.Y. 2000)..........................................................................................9

*DirecTV Latin Am., LLC v. Park 610, LLC*,
691 F. Supp. 2d 405 (S.D.N.Y. 2010)..............................................................................17

*DK LIPA, LLC v. Sybac Solar, LLC*,
Case No. 15-cv-6471 (JPO) (S.D.N.Y)........................................................................3, 21

*DK LIPA, LLC v. Sybac Solar, LLC*,
Case No. 19-cv-1405 (LGS)(DCF) (S.D.N.Y.) ..............................................3, 4, 5, 7, 8, 9, 11

*East Hampton Union Free School Dist. v. Sandpebble Bdlrs., Inc.*,
66 A.D.3d 122 (2d Dep't 2009) .......................................................................................14

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
228 F.R.D. 508 (S.D.N.Y. 2005) .....................................................................................15

*Federal Deposit Ins. Corp. v. Porco*,
75 N.Y.2d 840 (1990) ....................................................................................................18

*Fundacion Presidente Allende v. Banco de Chile*,
2006 WL 2796793 (S.D.N.Y. May 29, 2006) ...................................................................18

*Geren v. Quantum Chem. Corp.*,
832 F. Supp. 728 (S.D.N.Y. 1993)...................................................................................18

*In re Gibraltor Amusements, Ltd.*,
291 F.2d 22 (2d Cir. 1961)..............................................................................................14

*Granda v. Trujillo*,
2019 WL 367983 (S.D.N.Y. 2019)...................................................................................19

*Harris v. Mills*,
572 F.3d 66 (2d Cir. 2009)................................................................................................8

*Hogan v. Fischer*,
738 F.3d 509 (2d Cir. 2013)..............................................................................................8

*IMG Fragrance Brands, LLC v Houbigant, Inc.*,
679 F. Supp. 2d 395 (S.D.N.Y. 2009)........................................................................13, 14

iv

*JBCHoldings NY, LLC v. Pakter,*
    931 F. Supp. 2d 514 (S.D.N.Y. 2013)........................................................................11

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.,*
    295 F. Supp. 2d 366 (S.D.N.Y. 2003)......................................................................15

*Koret, Inc. v. Christian Dior, S.A.,*
    161 A.D.2d 156 (1st Dep't 1990) ..............................................................................12

*Lakah v. UBS AG,*
    996 F. Supp. 2d 250 (S.D.N.Y. 2014)......................................................................16

*Lama Holding Co. v. Smith Barney Inc.,*
    88 N.Y.2d 413 (1996)...............................................................................................10

*Marine Midland Bank v. Murkoff,*
    120 A.D.2d 122 (2d Dep't 1986)........................................................................20, 21

*MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Services Co.,*
    910 F. Supp. 913 (S.D.N.Y. 1995)..........................................................................22

*Mina Inv. Holdings Ltd. v. Lefkowitz,*
    16 F. Supp. 2d 355 (S.D.N.Y. 1998)........................................................................11

*Mina Inv. Holdings Ltd. v. Lefkowitz,*
    184 F.R.D. 245 (S.D.N.Y. 1999) ..............................................................................12

*Minetos v. City University of New York,*
    925 F. Supp. 177 (S.D.N.Y. 1996)...........................................................................12

*Morris v. New York State Dept. of Taxation and Finance,*
    82 N.Y.2d 135 (1993) ...............................................................................................15

*Murray Engineering P.C. v. Remke,*
    2018 WL 3773991 (S.D.N.Y. Aug. 8, 2018) ...........................................................19

*Ningbo Prod. Imp. & Exp. Co. v. Eliau,*
    2011 WL 5142756 (S.D.N.Y. Oct. 31, 2011) .........................................................15

*Ole Media Mgmt., L.P. v. EMI April Music, Inc.,*
    2013 U.S. Dist. LEXIS 82073, 2013 WL 2531277 (S.D.N.Y. Jun. 10, 2013) ........10

*Paradigm BioDevices, Inc. v. Viscogliosi Bros., LLC,*
    842 F. Supp. 2d 661 (S.D.N.Y. 2012)................................................................18, 19

*Puma Industrial Consulting, Inc. v. Daal Associates, Inc.,*
    808 F.2d 982 (2d Cir. 1987).....................................................................................14

*Rockland Exposition, Inc. v. Alliance of Automotive Serv. Providers of N.J.*,
  894 F. Supp. 2d 288 (S.D.N.Y. 2012) ........................................................................12

*Scuderi v. Springer*,
  No. 03-cv-2098, 2004 WL 2711048 (S.D.N.Y. Nov. 29, 2004) ...............................13

*Sharma v. Skaarup Ship Mgmt. Corp.*,
  916 F.2d 820 (2d Cir. 1990) ......................................................................................11

*In re Sharp Int'l Corp.*,
  403 F.3d 43 (2d Cir. 2005) ...................................................................................19, 23

*Solow v. Stone*,
  994 F. Supp. 173 (S.D.N.Y. 1998), *aff'd*, 163 F.3d 151 (2d Cir. 1998) ...................12

*In Re Tribune Company Fraudulent Conveyance Litig.*,
  2017 WL 82391 (S.D.N.Y. Jan. 6, 2017) ..................................................................22

*United States v. McCombs*,
  30 F.3d 310 (2d Cir. 1994) ........................................................................................20

*In re USA United Fleet, Inc.*,
  559 B.R. 41 (E.D.N.Y. 2016) .....................................................................................23

*Waite v. Schoenbach*,
  2010 WL 4456955 (E.D.N.Y. Dec. 23, 2013) ......................................................22, 23

*Walkovszky v. Carlton*,
  18 N.Y.2d 414 (1966) ................................................................................................14

*Wolff v. Rare Medium, Inc.*,
  171 F. Supp. 2d 354 (S.D.N.Y. 2001) .......................................................................22

**Statutes**

DCL § 273.................................................................................................5, 7, 17, 23, 24

DCL § 274.................................................................................................5, 7, 17, 23, 24

DCL § 275.................................................................................................5, 7, 17, 23, 24

DCL § 276.............................................................................................5, 7, 17, 19, 20, 23

DCL § 276-a........................................................................................................7, 17, 23

Fed. R. Civ. P. 9(b) ...............................................................................................19, 23

Fed. R. Civ. P. 12(b)(6)............................................................................................1, 8

Defendants MISF Solar, LLC ("MISF Solar"), Mastic Industrial Solar, LLC ("Mastic"), Gerald Rosengarten, Howard Rosengarten, Sion Sohayegh and Bijoun Kaypor (the "Individual Mastic Defendants" and, together with Mastic, the "Mastic Defendants"), and Markus Falz ("Markus") and Ulrich Falz ("Ulrich")[1] (the "Falz Defendants" and, collectively with MISF Solar and the Mastic Defendants, the "Defendants"), by their respective undersigned counsel, respectfully submit this consolidated Memorandum of Law in support of Defendants' motion to dismiss plaintiff DK LIPA's ("DK LIPA") Complaint (the "Complaint")[2] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").[3]

## PRELIMINARY STATEMENT

As a threshold matter, the Complaint, which alleges two claims against all Defendants (Counts One and Three) and an additional claim against the Falz Defendants (Count Two), must be dismissed because all three claims are subsumed within – and mooted by – the existence of claims DK LIPA is pursuing in another action pending before this Court. Additionally, all three claims are deficient because they fail to satisfy basic pleading requirements and are refuted by the Complaint's factual allegations. Each of these defects is fatal and warrants dismissal of the Complaint as a matter of law, and with prejudice.[4]

---

[1] Defendant Thomas Falz ("Thomas") has not yet been served with the Complaint and, upon information and belief, Artur Madej ("Artur") has also not yet been served. Defendant Project NY, LLC ("Project NY") filed on July 13, 2020 an Answer to the Complaint. ECF No. 37.

[2] A copy of the Complaint is attached as Exhibit "A" to the accompanying Declaration of James M. Wicks, Esq., dated November 23, 2020 ("Wicks Decl.").

[3] Defendants filed a consolidated motion pursuant to the Court's October 9, 2020 Order. ECF No. 60.

[4] Dismissal with prejudice is warranted not only because the defects in the Complaint are incurable and any amendment would be futile, but also because DK LIPA's pre-motion letter response (ECF No. 54) made no mention of an intention to seek leave to replead, a clear indication that it is standing on the Complaint as pleaded. *See* Rule III(C)(2) of this Court's Individual Rules and Procedures for Civil Cases ("The party

The history of this litigation is well known to the Court.  Indeed, this action is DK LIPA's *third* lawsuit under a 2013 "Right of First Offer Agreement" between DK LIPA and non-party SB Energy Holdings, LLC ("SBE")[5] (the "ROFO Agreement").  DK LIPA alleges that the ROFO Agreement gave it the right to purchase from SBE a solar energy project arising from three power purchase agreements ("PPAs") between SBE and PSEG Long Island (successor to the Long Island Power Authority) ("PSEG LI"), pursuant to which solar-generated electric power would be sold to PSEG LI (the "Project").  Since the PPAs were in existence when the ROFO Agreement was entered, and realization of the Project required, among other things, construction of a facility to generate the electric power to be sold, the ROFO Agreement contemplated that SBE would construct the facility.

DK LIPA further alleges that under the ROFO Agreement, it had the right to (1) purchase the Project during a defined "Exclusivity Period;" and (2) if DK LIPA failed to purchase the Project during the Exclusivity Period, it would have a right, for a period of three-years, to match any third-party offer to purchase the Project (*i.e.*, a "right of first refusal").  According to the Complaint, the Exclusivity Period ended by December 31, 2015, at the latest.

In 2015, during the Exclusivity Period, DK LIPA and SBE began negotiating a purchase agreement for the Project, including an engineering, procurement, and construction contract ("EPC Contract") for the generation facility.  Notwithstanding SBE's efforts to negotiate in good faith with DK LIPA, the parties were unable to finalize or execute the necessary contracts to effectuate DK LIPA's purchase of the Project.  When these negotiations broke down, DK LIPA launched its

---

responding [to a pre-motion letter on a motion to dismiss] shall unambiguously state any intention to seek leave to amend.").

[5] SBE is formerly known as Sybac Solar LLC.

*first* legal attack alleging various breaches of the ROFO Agreement, in an effort to prevent SBE from negotiating with other developers (the "2015 Action").[6]  The 2015 Action was eventually dismissed as moot because there was no actual or threatened breach of the ROFO Agreement.  *See* 15-cv-6471, ECF Nos. 132-133.

In February 2019, DK LIPA commenced another action in the Southern District entitled *DK LIPA, LLC v. Sybac Solar, LLC, et al.*, 19-cv-1405 (LGS)(DCF) (the "2019 Action").  In the 2019 Action, DK LIPA alleges SBE breached the ROFO Agreement by entering into a 2016 Letter of Intent ("LOI") with MISF, LLC to co-develop the Project, and did so without offering DK LIPA a right of first refusal.  As relevant here, the LOI expressly provided that the parties would form a joint venture to which SBE would transfer the PPAs – the very same PPAs identified in the ROFO Agreement.

Less than a year later, and during the pendency of the 2019 Action, DK LIPA commenced this action (the "2020 Action") – its *third* legal attack predicated on the ROFO Agreement – alleging new claims against new parties based on the 2017 transfer of the PPAs to the joint venture formed pursuant to the LOI at issue in the 2019 Action.  In other words, DK LIPA now claims the 2017 transfer of the PPAs is a new breach of the ROFO Agreement giving rise to new claims.  Simultaneously, with these allegations DK LIPA concedes that the PPAs were transferred pursuant to the very same LOI that is the subject of the 2019 Action.  Since transfer of the PPAs was a component of the LOI, and the 2019 Action will determine whether the LOI was a breach of the ROFO Agreement, the claims in this action, based on transfer of the PPAs pursuant to the LOI,

---

[6] *DK LIPA, LLC v. Sybac Solar, LLC*, Case No. 15-cv-6471 (JPO) (S.D.N.Y).

are subsumed within and mooted by the 2019 Action, regardless of the outcome of the 2019 Action. Dismissal of the Complaint is warranted for this reason alone. *See* Point I, *infra*.

Even if the claims in the 2020 Action are not mooted by the 2019 Action, the Complaint still warrants dismissal because it fails to plausibly allege any claims for relief.

Indeed, DK LIPA's first claim for tortious interference with contract against all defendants must be dismissed because, in addition to failing to allege an actionable breach based on the transfer of the PPAs pursuant to the LOI, it fails to allege, as required, that SBE would not have breached the ROFO Agreement *but for* Defendants' tortious conduct. *See* Point II(A), *infra*.

In addition, the tortious interference claim must be dismissed as against the Falz Defendants because (i) the Falz Defendants, as officers and/or managers of SBE, are not strangers to the ROFO Agreement and, as such, cannot be held liable under a theory of tortious interference, and (ii) DK LIPA has not alleged that the Falz Defendants acted outside the scope of their authority as officers/managers of SBE, or with malice to impair DK LIPA's business. *See* Point II(B), *infra*. The tortious interference claim is likewise defective (i) as against the Mastic Defendants because it fails to allege any tortious conduct on their part, and (ii) as against the Individual Mastic Defendants because it fails to allege they engaged in any conduct whatsoever in their individual capacities or any basis for piercing the corporate veil as against them (and does not even purport to do so). *See* Point II(C), *infra*.

DK LIPA's second claim, breach of contract against the Falz Defendants – premised on the theory that they are SBE's alter egos – must be dismissed because DK LIPA fails to allege any facts demonstrating the Falz Defendants disregarded the corporate form or exercised complete domination over SBE. The conclusory allegations interposed against the Falz Defendants – *i.e.*, that they were SBE's owners or equitable owners, controlled SBE, and were aware of the ROFO

Agreement and purportedly "stood to gain" from the alleged transaction – are insufficient to pierce the corporate veil as a matter of law. *See* Point III, *infra*.

DK LIPA's third claim, unlawful transfer against *all* Defendants, also fails for several reasons.

*First*, the unlawful transfer claim must be dismissed as against the Falz Defendants and the Mastic Defendants because a fraudulent conveyance claim under New York law is actionable only against the transferee. *See* Point IV(A), *infra.* Moreover, DK LIPA fails to adequately allege the Falz Defendants and the Mastic Defendants were "beneficiaries" of the transfer. *See id.*

*Second*, DK LIPA's claim based on the New York Debtor Creditor Law ("DCL") § 276 must be dismissed as against all Defendants because the Complaint fails to allege with particularity that the Defendants acted with actual fraudulent intent, and also because it fails to plausibly allege the "badges of fraud" necessary to support an inference of fraudulent intent. *See* Point IV(B), *infra*.

*Third*, DK LIPA's claim for constructive fraud pursuant to DCL §§ 273-275 fails as against all Defendants because at least two of the required elements – that the transfer was made without fair consideration and left the transferor insolvent or with unreasonably small capital – are refuted by DK LIPA's allegations that Project NY (a 50% member of MISF Solar) is the alter ego of SBE. Accepting DK LIPA's allegations as true on this motion, SBE – through its alleged alter ego, Project NY – received as consideration a 50% ownership interest in the entity that owns the PPAs, and therefore was not left insolvent by the transfer. *See* Point IV(C), *infra*.

The 2020 Action should be seen for exactly what it is – DK LIPA's bad faith attempt to improperly recover the same damages that are the subject of the 2019 Action. Try as it may, DK

LIPA cannot disguise that reality or overcome the Complaint's fatal defects, warranting its dismissal as a matter of law, and with prejudice.

## STATEMENT OF FACTS[7]

### A. The Right of First Offer Agreement

On October 11, 2013, SBE and DK LIPA entered into the ROFO Agreement, which relates to DK LIPA's right to purchase the Project from SBE. *See* Complaint (Wicks Decl., Ex. A), ¶ 33.[8] The ROFO Agreement gave DK LIPA an "Exclusivity Period" in which to negotiate a purchase agreement and EPC Contract with SBE. *Id.* at ¶ 39. During the Exclusivity Period, SBE was prohibited from accepting from any third party an offer or proposal "for the purchase, acquisition or financing of the Project." *Id.* at ¶ 40. Upon commencement of the Exclusivity Period and until its termination, DK LIPA and SBE were to negotiate and finalize a purchase agreement and EPC Contract. *Id.* at ¶ 41. Section 7(a) of the ROFO Agreement provides that the ROFO Agreement would terminate if the Exclusivity Period expired before the parties agreed to material terms for a purchase agreement and EPC Contract. *Id.* at ¶ 42. In the event the ROFO Agreement was terminated under Section 7(a), Section 8 grants DK LIPA, for a period of thirty-six (36) months following termination, a one-time "right of first refusal" to match any third-party offer to purchase the Project. *Id.* at ¶¶ 42-43. According to the Complaint, the Exclusivity Period terminated no later than December 31, 2015. *Id.* at ¶ 79.

---

[7] The truth of the allegations in the Complaint is assumed for purposes of this motion to dismiss.

[8] A copy of the ROFO Agreement is attached as Exhibit "B" to the Wicks Decl.

### B.  The Letter of Intent and Joint Venture

DK LIPA alleges it learned through "public filings" that SBE and MISF entered on November 14, 2016 the LOI "to develop a solar project in Brookhaven." *Id.* at ¶ 59.[9]  The Complaint alleges the PPAs identified in the LOI, which is the subject of the 2019 Action, are the same PPAs identified in the ROFO Agreement. *Id.* at ¶ 60.  On July 28, 2017, SBE transferred the PPAs to MISF Solar, the joint venture contemplated in the LOI. *Id.* at ¶ 4.  The PPAs transferred to MISF Solar are the same PPAs referenced in the ROFO Agreement. *Id.* at ¶¶ 17, 60.  On August 31, 2018, MISF Solar, Mastic, and Project NY entered into the joint venture agreement ("JV Agreement") contemplated by the LOI. *Id.* at ¶¶ 70, 81.

### C.  The 2019 Action

On February 13, 2019, DK LIPA commenced the 2019 Action against SBE and MISF, LLC.  In the 2019 Action, DK LIPA asserted claims against SBE (for breach of contract) and MISF, LLC (for tortious interference with contract) arising out of SBE's alleged breach of Section 8 of the ROFO Agreement by entering the LOI on November 14, 2016 with MISF, LLC to develop the Project contemplated by the ROFO Agreement without offering DK LIPA a right of first refusal.  The LOI involves the same PPAs that were subject to the ROFO.  *See* 19-cv-1405, ECF No. 21 ("2019 Am. Complaint"), ¶¶ 58-60.

### D.  The 2020 Action

On June 4, 2020, DK LIPA commenced the 2020 Action, alleging that (i) Defendants tortiously interfered with the ROFO Agreement (Count One), (ii) Defendants engaged in the unlawful transfer of the PPAs pursuant to Sections 273-276(a) of the DCL (Count Three), and (iii)

---

[9] A copy of the LOI is attached as Exhibit "C" to the Wicks Decl.

Markus, Thomas, Ulrich and Project NY – acting as SBE's purported "alter egos" – breached the ROFO Agreement (Count Two).  *See* Complaint, ¶¶ 97-122.

## ARGUMENT

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  This plausibility standard is guided by "[t]wo working principles." *Iqbal*, 556 U.S. at 678.  "*First*, although 'a court must accept as true the allegations contained in a complaint,' that 'tenet' is 'inapplicable to legal conclusions;' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), quoting *Iqbal*, 556 U.S. at 678.  "*Second*, only complaints that state a 'plausible claim for relief' can survive a Rule 12(b)(6) motion to dismiss."  *Id*. (quoting *Iqbal*, 556 U.S. at 679)).  A party's "obligation to provide the grounds of his entitled relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alterations omitted).  If a plaintiff has not "nudged [his or her] claim across the line from conceivable to plausible, the complaint must be dismissed." *Id.* at 570.  Based on this standard, the Complaint clearly fails to pass muster.

## POINT I

### AS A THRESHOLD MATTER, THE 2019 ACTION MOOTS THE 2020 ACTION AS AGAINST ALL DEFENDANTS, REGARDLESS OF HOW THE 2019 ACTION IS RESOLVED

It is undisputed that: (1) DK LIPA's claims in the 2019 Action are based on the allegation that SBE breached the ROFO Agreement by entering into the LOI without offering DK LIPA a

right of first refusal; and (2) transfer of the PPAs was a component of the transaction set forth in the LOI. Thus, DK LIPA's claims stand or fall on whether the LOI breached the ROFO Agreement. That issue is the subject of, and will be determined in, the 2019 Action.

With the 2020 Action, DK LIPA is nonetheless attempting to make new claims based on the transfer of the PPAs. To justify this sleight of hand, DK LIPA improperly mischaracterizes the transfer as an act that, in and of itself, was a different breach of the ROFO Agreement giving rise to the new claims. However, this mischaracterization defies common sense and is undermined by DK LIPA's concession that the PPAs were transferred *pursuant to the very same LOI that is the subject of the 2019 Action*. Since transfer of the PPAs was a component of the LOI, and the 2019 Action will determine whether the LOI breached the ROFO Agreement, the claims in the 2020 Action based on transfer of the PPAs pursuant to the LOI are, by definition, subsumed within – and mooted by – the 2019 Action, regardless of the outcome of the 2019 Action.

Critically, if the LOI (entered into between SBE and MISF, LLC) resulted in a breach of the ROFO Agreement, as DK LIPA alleges in the 2019 Action, DK LIPA will have its remedy in the 2019 Action; it would not also be able to double (and potentially triple) dip by bringing new claims against new parties for each act performed in furtherance of the LOI. Conversely, if the LOI did *not* result in a breach of the ROFO Agreement, then *ipso facto*, the subsequent transfer of the PPAs – which DK LIPA concedes is a component of the LOI – *cannot* be a breach of the ROFO either. In other words, if the LOI did not breach the ROFO, then SBE permissibly entered the LOI, and DK LIPA has no claim against Defendants for performing under the LOI by transferring the PPAs. Dismissal of the Complaint is warranted for this reason alone.[10]

---

[10] "As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (S.D.N.Y. 2000) (dismissing claims in second filed action that pre-dated filing of original action); *see also Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 821 (1976) (affirming dismissal of federal action in favor

## POINT II

### THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE A CLAIM AGAINST ALL DEFENDANTS FOR TORTIOUS INTERFERENCE WITH CONTRACT

DK LIPA's first claim, interposed against all Defendants, alleges Defendants tortiously interfered with DK LIPA's rights under the ROFO Agreement. Complaint, ¶¶ 97-102.  Under New York law, "[t]ortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424, 668 N.E.2d 1370, 1375 (1996).  Moreover, the allegations in support of a tortious interference with contract claim may not be vague or conclusory. *See, e.g., Black Car and Livery Ins., Inc. v. H&W Brokerage, Inc.*, 28 A.D.3d 595, 595 (2d Dep't 2006).

DK LIPA's tortious interference claim is plagued by several fatal defects, requiring dismissal as against all Defendants as a matter of law.

---

of prior pending federal action).  The parties need not be identical to warrant dismissal of the second filed action; "the relevant test is whether the parties are substantially similar." *Ole Media Mgmt., L.P. v. EMI April Music, Inc.*, 2013 U.S. Dist. LEXIS 82073, at *8-10, 2013 WL 2531277 (S.D.N.Y. Jun. 10, 2013); *see Argus Media, Ltd. v. Tradition Fin. Servs.*, 2009 U.S. Dist. LEXIS 120866, 2009 WL 5125113, at *6 (S.D.N.Y. Dec. 29, 2009) (parties sufficiently similar to justify a stay where "both actions involve Defendants' (and/or their affiliates') right to copy and distribute plaintiff's copyrighted work"); *Credicom N.V. v. Colony Credicom L.P.*, 2000 U.S. Dist. LEXIS 2916, 2000 WL 282968, at *2 (S.D.N.Y. Mar. 16, 2000) (difference "not material" where additional defendant in one of parallel actions is parent corporation to one of defendants in both actions); *Advantage Int'l Mgmt., Inc. v. Martinez*, 1994 U.S. Dist. LEXIS 12535, 1994 WL 482114, at *4 (S.D.N.Y. Sept. 7, 1994) ("All that is required in this Circuit is that the parties and issues be sufficiently similar so that when a judgment issues from the foreign court, res judicata will apply.").

## A. The Complaint Fails to Allege Defendants Were the "But For" Cause of SBE's Alleged Breach of the ROFO Agreement

As an initial matter, Defendants have already demonstrated that the Complaint fails to state a claim for tortious interference because it is not (and cannot be) predicated on a breach. *See* Point I, *supra*.[11] In addition, DK LIPA has failed to allege that SBE would not have breached the ROFO Agreement "but for" Defendants' conduct.

It is well-settled that a plaintiff alleging a tortious interference claim must also plead that the "defendant's actions were the 'but for' cause of the alleged breach—that is, that there would not have been a breach but for the activities of the defendant." *Mina Inv. Holdings Ltd. v. Lefkowitz*, 16 F. Supp. 2d 355, 359 (S.D.N.Y. 1998); *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 534 (S.D.N.Y 2013) (dismissing tortious interference claim where plaintiffs did not plausibly allege defendants were the "but for" cause of plaintiff's injury). The failure to allege "but for" causation is a fatal pleading defect, requiring dismissal of a tortious interference claim as a matter of law. *See, e.g., Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990).

DK LIPA has not made any allegations that Defendants' conduct was the "but for" cause of SBE's alleged breach of the ROFO Agreement. Instead, the Complaint alleges, in a conclusory

---

[11] It should be noted that DK LIPA's sole response to this point – made in its September 8, 2020 response (ECF No. 54) to MISF Solar's August 24, 2020 pre-motion letter to the Court (ECF No. 49), adopted by all Defendants – is that a tortious interference claim can co-exist with a breach of contract claim, and that an actual breach is an element of tortious interference. ECF No. 54, at p.3. But, this ignores Defendants' argument that DK LIPA *already has* a tortious interference claim in the 2019 Action – against MISF, LLC – predicated on an alleged breach of the ROFO Agreement. DK LIPA's claims stand or fall on whether the LOI breached the ROFO Agreement, and DK LIPA cannot also sue for the transfer of the PPAs, or any other act taken pursuant to the LOI. DK LIPA's attempt to conflate the 2020 Action and the 2019 Action by claiming that "rather than [the 2019 Action] mooting the tortious interference claim [in the 2020 Action], establishing that SBE breached the [ROFO] Agreement [in the 2019 Action] is an actual element of the [tortious interference] claim [in the 2020 Action]" (ECF No. 54), is nothing more than a sleight of hand that does not carry the day.

manner, that Defendants collectively tortiously interfered with the ROFO Agreement by "caus[ing] Sybac not to give DK LIPA notice of the proposed transaction and an opportunity to match it" (Complaint, ¶ 87), thereby "procur[ing] Sybac's breach of the contract without justification." *Id.* at ¶ 101. There are no allegations that Defendants engaged in any specific conduct that caused SBE's breach of the ROFO Agreement.[12]

### B. The Complaint Fails to Meet the Heightened Pleading Standard Required to Plausibly Allege a Tortious Interference Claim Against the Falz Defendants, Officers and/or Managers of SBE

The Complaint must be dismissed as against the Falz Defendants for the additional reason that it fails to allege the Falz Defendants acted outside the scope of their authority as officers and/or managers of SBE, or acted with malice to impair DK LIPA's business for purely personal gain.

It is well-settled that "only a stranger to a contract, such as a third party, can be liable for tortious interference with contract." *Minetos v. City University of New York*, 925 F. Supp. 177, 187 (S.D.N.Y. 1996), quoting *Koret, Inc. v. Christian Dior, S.A.*, 161 A.D.2d 156, 157 (1st Dep't 1990). For this reason, "corporate officers and directors generally cannot be held liable under a theory of tortious interference for causing the corporation to breach a contract." *Solow v. Stone*, 994 F. Supp. 173, 181 (S.D.N.Y. 1998), *aff'd*, 163 F.3d 151 (2d Cir. 1998); *Rockland Exposition, Inc. v. Alliance of Automotive Serv. Providers of New Jersey*, 894 F. Supp. 2d 288, 337 (S.D.N.Y.

---

[12] Here too, DK LIPA's pre-motion response letter demonstrates the inherent flaws in this claim. Tellingly, DK LIPA states "MISF Solar clearly was a 'but for' cause of SBE's breach of the [ROFO] Agreement because MISF Solar acquired the Project without allowing DK LIPA to exercise the ROFO. In other words, if MISF did not make an offer to acquire the project, there would be no offer to present to DK LIPA." ECF No. 54. This argument is conclusory and misses the point, because the "but for" element required to state a claim for tortious interference refers to the conduct that allegedly induced the breach – that is, DK LIPA must allege Defendants' actions were the "but for" cause of the breach. *Mina Inv. Holdings Ltd. v. Lefkowitz*, 184 F.R.D. 245, 255-56 (S.D.N.Y. 1999). Here, an offer to acquire the Project does not constitute tortious interference with the ROFO Agreement, and the Complaint lacks any allegation that MISF Solar, or any of the other Defendants, did anything to induce SBE to not present the offer to DK LIPA.

2012) ("A claim for tortious interference with a contract . . . cannot be based on the actions of a director or officer in his official capacity.") (citation omitted).

Although a "narrow exception exists for officers acting wholly outside the scope of their authority for purely personal gain," an enhanced pleading standard applies, requiring the plaintiff to allege, in non-conclusory language, that the officer's actions were "performed with malice and were calculated to impair the plaintiff's business for the personal profit of the [officer]." *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 407-08 (S.D.N.Y. 2009). The failure to meet this heightened pleading standard requires dismissal of the tortious inference claim as a matter of law. *Id.*; *see also Scuderi v. Springer*, No. 03-cv-2098, 2004 WL 2711048, at *2 (S.D.N.Y. Nov. 29, 2004) (allegations that defendants acted "outside the scope of their authority as officers" and "received, in whole or in part, the compensation" due to plaintiff were conclusory and failed to meet the enhanced pleading standard).

The Falz Defendants, as officers and/or managers of SBE, cannot be liable for tortiously interfering with the ROFO Agreement as a matter of law, absent specific factual allegations demonstrating Markus and Ulrich each acted outside the scope of their authority as officers and/or managers of SBE or with malice, or that their alleged actions were calculated to impair DK LIPA's business for their own personal profit. *See IMG Fragrance*, 679 F. Supp. 2d at 407-08.[13] The Complaint contains no such allegations. Rather, DK LIPA alleges that "[a]ll of the Defendants personally benefited from inducing" SBE to breach the ROFO Agreement (Complaint, ¶ 88), and that the Falz family "exposed [SBE] to the cost of litigation" and "stood to gain tremendously"

---

[13] The Complaint alleges the Falz Defendants were SBE's "owners or equitable owners" and exercised "considerable authority over [SBE]." Complaint, ¶¶ 108-09.

from purported tax credits that would "likely" be received by Project NY. *Id.* at ¶¶ 90-91, 93.[14]

These conclusory and speculative allegations fail to meet the enhanced pleading standard set forth

in *IMG Fragrance*.

### C. The Complaint Fails To State A Tortious Interference Claim Against The Individual Mastic Defendants

In addition to its fatal defects as to all Defendants, the tortious interference claim fails as

against the Individual Mastic Defendants because it does not allege any conduct by them in their

*individual capacity*, as opposed to their role as members of Mastic.  Nor does the Complaint allege

that the Individual Mastic Defendants are the alter egos of Mastic, or any basis to pierce the

corporate veil.[15]

"For most purposes, the law deals with a corporation as an entity distinct from its

shareholders."  *In re Gibraltor Amusements, Ltd.*, 291 F.2d 22, 24-25 (2d Cir. 1961); *see also*

*Puma Industrial Consulting, Inc. v. Daal Associates, Inc*., 808 F.2d 982, 986 (2d Cir. 1987)

(reversing judgment against individual shareholders of corporation liable for breach of contract).

"[C]ourts generally are reluctant, under New York law, to pierce the corporate veil."  *Puma*

*Industrial Consulting*, 808 F.2d at 986; *see also Walkovszky v. Carlton*, 18 N.Y.2d 414, 418-19

(1966) (granting motion to dismiss individual because complaint failed to allege that he was doing

business in his personal capacity).

---

[14] With respect to Ulrich, the Complaint alleges only that (i) Ulrich received from Markus an email purportedly asking whether Ulrich was "willing to invest in the Project," and (ii) that the 2017 *drafts* of the JV Agreement list Ulrich as a co-manager of MISF Solar, LLC.  Complaint, ¶ 94.  Neither of these allegations, if true, demonstrate that Ulrich was an alter ego of SBE or acted outside the scope of his authority as a manager of SBE.

[15] The Individual Mastic Defendants are also entitled to dismissal of the fraudulent transfer claim (*see* Point IV, *infra*) for the same reason.

Under New York Law, factors to be considered in determining whether the corporate veil can be pierced include "whether there was a failure to adhere to corporate formalities, inadequate capitalization, commingling of assets, and use of corporate funds for personal use." *East Hampton Union Free School Dist. v. Sandpebble Bdlrs, Inc.*, 66 A.D.3d 122, 127 (2d Dep't 2009). Because the Complaint does not even purport to allege any of these factors as against the Individual Mastic Defendants, this claim should dismissed as against them.

**POINT III**

**THE COMPLAINT FAILS TO ALLEGE A BREACH OF CONTRACT CLAIM
AGAINST THE FALZ DEFENDANTS BASED ON AN ALTER EGO THEORY**

DK LIPA's second claim, interposed against the Falz Defendants, purports to assert a breach of contract claim against them based on an alter ego theory of liability. Complaint, ¶¶ 106, 119. Specifically, DK LIPA seeks to pierce SBE's corporate veil and hold Markus and Ulrich each personally liable for breaching the ROFO Agreement, and for their purported role in transferring the PPAs to MISF Solar. *Id.* at ¶¶ 104-08, 117-22.

As noted above (*see* Point II, *supra*), to pierce the corporate veil a plaintiff must plausibly allege (1) the owner exercised complete domination of the corporation in respect to the transaction attacked, and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury. *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005), citing *Morris v. New York State Dept. of Taxation and Finance*, 82 N.Y.2d 135, 141 (1993); *Ningbo Prod. Imp. & Exp. Co. v. Eliau*, 2011 WL 5142756, at *5 (S.D.N.Y. Oct. 31, 2011). To avoid dismissal, a party seeking application of the doctrine must come forward with factual allegations as to both elements of the veil-piercing claim. *See, e.g., JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs.*, 295 F. Supp. 2d 366, 379 (S.D.N.Y. 2003) (both elements of a veil-piercing claim must be alleged).

In determining whether the "complete domination" element has been satisfied, courts consider many factors, including:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arm's length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity; and (10) intermingling of property between the entities.

*In re Amaranth Nat. Gas Commodities Litig.*, 612 F. Supp. 2d 376, 385 (S.D.N.Y. 2009), *aff'd*, 730 F.3d 170 (2d Cir. 2013). The party requesting the veil be pierced bears a "heavy burden." *Lakah v. UBS AG*, 996 F. Supp. 2d 250, 260 (S.D.N.Y. 2014).

Here, DK LIPA's second claim is premised entirely on SBE's alleged breach of the ROFO Agreement by purportedly transferring the PPAs to MISF Solar. Complaint, ¶¶ 103-115. This alleged conduct, even if true, does not constitute a fraud or wrong justifying piercing the corporate veil. *See, e.g., Bonacasa Realty Co., LLC v Salvatore*, 109 A.D.3d 946, 947 (2d Dep't 2013) ("[A] simple breach of contract, without more, does not constitute a fraud or wrong warranting the piercing the corporate veil.") (citation omitted).

Nor has DK LIPA adequately alleged that the Falz Defendants, individually, exercised complete domination of SBE. For example, the Complaint does not allege facts demonstrating Markus or Ulrich misused the corporate form, disregarded corporate formalities, comingled funds, or otherwise misused the separate identity of SBE. *In re Amaranth Nat. Gas Commodities Litig.*, 612 F. Supp. 2d at 385 (dismissing complaint for failure to adequately allege misuse of corporate form). DK LIPA's conclusory allegations that "Sybac was the alter ego of [the Falz Defendants]" (Complaint, ¶ 106), the Falz Defendants "controlled [SBE]" (*id.* at ¶ 107), and "exercised considerable authority over Sybac and acted as though the company's assets were [theirs] to

manage and distribute" (*id.* at ¶ 108), are insufficient to establish the Falz Defendants' dominance and control over SBE. *See, e.g., Capmark Fin. Group Inc. v. Goldman Sachs Credit Partners, L.P.*, 491 B.R. 335, 347 (S.D.N.Y. 2013) ("[C]onclusory allegations of dominance and control will not suffice to defeat a motion to dismiss.").[16]

Simply put, DK LIPA's conclusory allegations are insufficient to show the Falz Defendants exercised domination and control over SBE, and thus fail to adequately allege a claim based on an alter-ego theory of liability.

## POINT IV

### DK LIPA FAILS TO PLAUSIBLY ALLEGE A CLAIM AGAINST ALL DEFENDANTS FOR UNLAWFUL TRANSFER PURSUANT TO NEW YORK DEBTOR CREDITOR LAW

DK LIPA's third claim, interposed against all Defendants, purports to assert a fraudulent conveyance claim pursuant to DCL §§ 273, 274, 275, 276, and 276-a. Complaint, ¶¶ 116-122. Specifically, the Complaint alleges that Defendants, acting as "alter egos and/or successors-in-interest of" SBE, participated in the unlawful transfer of SBE's assets – namely, the transfer of the PPAs – with the intent to defraud DK LIPA. *Id.* ¶ 119. However, as demonstrated above, since transfer of the PPAs was not its own transaction unto itself but rather a component step of the deal outlined in the LOI, it cannot be viewed in a vacuum or form the basis of an independent fraudulent transfer claim (or any other claim). *See* Point I, *supra*. Moreover, this claim suffers from incurable pleading defects that warrant its dismissal.

---

[16] Although the Complaint alleges that the Falz Defendants were owners or equitable owners of SBE (*id.* at ¶ 109), one's ownership status, without more, is insufficient to satisfy the "complete domination" element of piercing the corporate veil. *See, e.g., DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 433 (S.D.N.Y. 2010) (allegations of corporate ownership, without more, do not show alter ego status).

### A. The Third Claim for Relief Is Not Actionable Against the Falz Defendants or the Mastic Defendants

It is well-settled that a fraudulent conveyance claim under New York law is actionable only against the transferee, and not against alleged third-party aiders and abettors of the transfer. *Paradigm BioDevices, Inc. v. Viscogliosi Bros.*, LLC, 842 F. Supp. 2d 661, 667 (S.D.N.Y. 2012). A fraudulent conveyance action "does not create an independent remedy of money damages against third parties who aided the debtor's transfer at all." *Geren v. Quantum Chem. Corp.*, 832 F. Supp. 728, 737 (S.D.N.Y. 1993), citing *Federal Deposit Ins. Corp. v. Porco*, 75 N.Y.2d 840, 842 (1990) (New York's fraudulent conveyance law does not create a creditor's cause of action against parties who are "neither transferees of the assets nor beneficiaries of the conveyance.").

Here, the Complaint unequivocally alleges SBE transferred the PPAs to MISF Solar – not the Falz Defendants or the Mastic Defendants. Complaint, ¶¶ 4, 22, 86. And so, neither the Falz Defendants nor the Mastic Defendants may be liable for the alleged fraudulent conveyance. *Paradigm BioDevices, Inc.*, 842 F. Supp. 2d at 667.

The Complaint also fails to sufficiently allege that the Falz Defendants or the Mastic Defendants were beneficiaries of the alleged fraudulent conveyance. Rather, the Complaint alleges only that (i) the Mastic Defendants "stood to benefit" from the alleged transfer, since they purportedly obtained a "massive" – albeit unspecified – tax credit, and other non-specific, unidentified "financial benefits" (Complaint, ¶ 96), and (ii) the Falz Defendants "stood to gain" from the alleged transfer, since "projects like the instant one provide developers with massive tax credits" which, in this case, "likely totaled millions of dollars." *Id.* at ¶ 90. Neither of these conclusory allegations allege sufficient facts demonstrating that the Falz Defendants or the Mastic Defendants actually benefitted from the alleged conveyance (*see, e.g., Fundacion Presidente Allende v. Banco de Chile*, 2006 WL 2796793, at *3 (S.D.N.Y. May 29, 2006) (dismissing DCL

§ 276 claim for failure to plead *factual* allegations establishing defendant benefitted from conveyance)), and neither allegation satisfies the particularity requirements of Fed. R. Civ. P. 9(b). *See, e.g., Paradigm BioDevices, Inc.*, 842 F. Supp. 2d at 668. Accordingly, the fraudulent transfer claim must be dismissed as against the Falz Defendants and the Mastic Defendants.[17]

## B. The Complaint Fails to Plausibly Allege a Claim Against All Defendants for Actual Fraudulent Conveyance Under DCL § 276

A conveyance is an actual fraudulent conveyance if it is made "with actual intent . . . to hinder, delay, or defraud either present or future creditors." N.Y. Debt. & Cred. L. § 276. To survive a motion to dismiss, the facts supporting allegations of "actual intent to hinder, delay, or defraud" must be "pled with specificity" pursuant to Fed. R. Civ. P. 9(b). *See, e.g., In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005) ("As 'actual intent to hinder, delay, or defraud' constitutes fraud, it must be pled with specificity, as required by Fed. R. Civ. P. 9(b)."), citing *Atlanta Shipping Corp. v. Chem. Bank*, 818 F.2d 240, 251 (2d Cir. 1987); *see also Granda v. Trujillo*, 2019 WL 367983, at *10 (S.D.N.Y. 2019); *Murray Engineering P.C. v. Remke*, 2018 WL 3773991, at *15 (S.D.N.Y. Aug. 8, 2018).

Here, the Complaint fails to plead facts demonstrating Defendants' actual fraudulent intent, let alone with the particularity required by Fed. R. Civ. P. 9(b). Instead, the Complaint parrots the statutory language of DCL § 276, alleging that SBE's purported transfer of the PPAs to MISF Solar was done "with the actual intent to hinder, delay or defraud Plaintiff." Complaint, ¶¶ 6, 117. This conclusory allegation, devoid of any facts, is insufficient to demonstrate the Defendants acted with actual fraudulent intent. *See, e.g., Cargo Partner AG v. Albatrans, Inc.*, 207 F. Supp. 2d 86,

---

[17] To the extent DK LIPA purports to assert claims against the Falz Defendants for unlawful transfer based on an alter-ego theory of liability, DK LIPA has not alleged facts sufficient to pierce the corporate veil. *See* Point III, *supra*.

116 (S.D.N.Y. 2002) (conclusory allegations of scienter insufficient absent facts giving rise to a strong inference of fraudulent intent).

Having failed to allege with particularity actual fraudulent intent, DK LIPA cites to various purported "badges of fraud" in an attempt to sustain its DCL § 276 claim. Complaint, ¶ 121.[18] Specifically, DK LIPA alleges (i) SBE transferred the Project to an entity 50% owned by "insiders" of SBE; (ii) these alleged "insiders" retained control of the Project after the transfer was made; (iii) the transfer was "actively concealed" from DK LIPA; (iv) SBE had been sued by DK LIPA before the transfer; (v) the Project was SBE's "biggest or one of its biggest" assets; (vi) $10 was not reasonable consideration for the Project; and (vii) SBE was "likely insolvent" after the transfer. Complaint, ¶ 121. These purported "badges of fraud" are inadequate to demonstrate fraudulent intent, as the "badges" rest entirely on conclusory allegations that are belied by other allegations in the Complaint.

*First*, although DK LIPA alleges SBE transferred the PPAs to an entity owned, in part, by "insiders" of SBE, the relationship at issue in this transaction is significantly different from the intra-family relationships typically present in fraudulent conveyance cases. *See e.g., United States v. McCombs*, 30 F.3d 310, 328 (2d Cir. 1994) (transfer to daughters); *ACLI Gov't Sec., Inc. v. Rhoades*, 653 F. Supp. 1388, 1395 (S.D.N.Y. 1987) (transfer to sister and law partner); *Marine*

---

[18] Badges of fraud include: (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the events and transactions under inquiry; (7) a questionable transfer not in the usual course of business; and (8) the secrecy, haste, or unusualness of the transaction. *In re Actrade Financial Technologies Ltd.*, 337 B.R. 791 (S.D.N.Y. 2005). "[T]he presence of one or more badges of fraud does not necessarily compel the conclusion that a conveyance is fraudulent." *A&M Global Mgmt. Corp. v. Northtown Urology Assoc., P.C.*, 115 A.D.3d 1283, 1288-89 (4th Dep't 2014).

*Midland Bank v. Murkoff*, 120 A.D.2d 122, 128 (2d Dep't 1986) (transfer to wife and bookkeeper). As DK LIPA acknowledges in the Complaint, at least half of MISF Solar is owned by Mastic, which is owned by the Individual Mastic Defendants (Complaint, ¶¶ 22, 25, 28), and there is no allegation that any of these individuals share a familial or "close" relationship with SBE.

*Second*, the critical question for purposes of inferring fraudulent intent is whether the *transferor* retained control over the assets that the creditor seeks to recover. Here, there are no facts alleged that would demonstrate the "insiders" of SBE retained "control" over the Project.

*Third*, DK LIPA alleges no facts in support of its allegation that Defendants "actively concealed" from DK LIPA the transfer of the PPAs. Although the Complaint references certain selectively quoted, self-serving emails purportedly exchanged among the Defendants (*see* Complaint, ¶¶ 8, 65, 66, 68), these emails demonstrate only that Defendants were aware of the ROFO Agreement – not that they actively concealed SBE's transfer of the PPAs. Indeed, there are no allegations that Defendants *actively* took steps to conceal from DK LIPA the purported transfer of the PPAs.[19]

*Fourth*, that DK LIPA had sued Sybac "before the transfer" has no bearing on the "badges of fraud" analysis, since there was no "pendency or threat of suit" at the time of the transfer. Indeed, the 2015 Action was dismissed as moot in February 2017, *five months before* the alleged transfer of the PPAs which – according to DK LIPA – occurred in July 2017. Complaint, ¶¶ 4, 118; *see also* 15-cv-6471, ECF Nos. 132-133.

*Fifth*, DK LIPA's allegation that the alleged transfer was not supported by adequate consideration is belied by other allegations in the Complaint – namely, that (i) SBE "would

---

[19] In any event, "active concealment" is not one of the "badges of fraud."

continue as the Engineering, Procurement and Construction ("EPC") contractor, *for which it would be compensated*" (Complaint, ¶ 75) (emphasis added), and (ii) that Project NY (a 50% member of MISF Solar) is the "alter ego" of SBE (*id.* ¶ 114). Accepting DK LIPA's allegations as true, then SBE (i) through its alleged alter ego, Project NY, received a 50% ownership stake in the entity that owns the Project, and (ii) received the right to provide EPC services for the Project, for which it would be compensated.

*Finally*, DK LIPA's allegations that "the Project was Sybac's biggest or one of its biggest assets" (Complaint, ¶ 121(e)), and that Sybac was "likely insolvent" after the transfer (*id.* at ¶ 121(g)), are wholly conclusory and unsupported by any relevant facts. *In re Adler*, 372 B.R. 572, 581 (E.D.N.Y. 2007) (conclusory allegations of "badges of fraud" are insufficient to demonstrate actual intent); *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 357 (S.D.N.Y. 2001) ("In order to avoid dismissal, plaintiffs must do more than plead mere '[c]onclusory allegations or legal conclusions masquerading as factual conclusions.'").

Importantly, there are no allegations that the transfer was unusual or not in the ordinary course of business (*MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Services Co.*, 910 F. Supp. 913, 935 (S.D.N.Y. 1995)), or that the transaction at issue "involve[d] sham or dummy corporations or fictitious parties." *In Re Tribune Company Fraudulent Conveyance Litig.*, 2017 WL 82391, at *14 (S.D.N.Y. Jan 6, 2017). Nor is there any allegation of "secrecy, haste, or unusualness of the transaction" – common badges of fraud. *In Re Actrade Fin. Tech. Ltd.*, 337 B.R. at 810.

Since DK LIPA has failed to plead with particularity either direct evidence of actual intent to defraud, or the presence of any "badges of fraud," its claim under DCL § 276 must be dismissed.[20]

### C. DK LIPA's Constructive Fraud Claims Under DCL §§ 273, 274, and 275 Are Inadequately Pled As Against All Defendants

DCL §§ 273, 274 and 275 address claims for "constructive fraud." *In re Sharp Int'l Corp.*, 403 F.3d at 53. Under these statutory provisions, "a conveyance by a debtor is deemed constructively fraudulent if it is made without 'fair consideration,'" and if either "(i) the transferor is insolvent or will be rendered insolvent by the transfer in question, DCL § 273; (ii) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, DCL § 274; or (iii) the transferor believes that it will incur debt beyond its ability to pay, DCL § 275." *Id.* at 53. Although claims for constructive fraudulent conveyance are not held to the heightened pleading requirements of Fed. R. Civ. P. 9(b), these claims cannot survive a motion to dismiss on conclusory allegations alone. *Waite*, 2010 WL 4456955, at *6 (allegations that "transfers were made without fair consideration" are conclusory and will not survive a motion to dismiss).

Here, the Complaint's conclusory – and speculative – allegations that SBE "was *likely* insolvent" after the transfer (Complaint ¶ 10 (emphasis added)), and that SBE would be "unable to satisfy a judgment to DK LIPA" (*id.* ¶ 121), are insufficient to survive a motion to dismiss.

---

[20] The third claim also purports to allege a claim pursuant to DCL § 276-a, which permits an award of attorneys' fees "[only] if the transfer is found to have been made by the debtor and received by the transferee with actual intent to delay, hinder or defraud the creditor." *Waite v. Schoenbach*, 2010 WL 4456955, at *5 (E.D.N.Y. Dec. 23, 2013). Because the Complaint fails to plead actual intent to defraud, let alone facts with any particularity, DK LIPA does not have a claim for attorneys' fees under DCL § 276-a. *In re USA United Fleet, Inc.*, 559 B.R. 41, 89 (E.D.N.Y. 2016) ("[A] claim for attorneys' fees under [DCL] § 276-a must be based on a *successful* claim to recover a fraudulent transfer under [DCL] § 276) (emphasis added).

Moreover, DK LIPA's allegations concerning inadequate consideration are belied by its other allegations in the Complaint demonstrating that SBE received, directly or indirectly, or will receive by virtue of becoming the EPC contractor on the Project, fair consideration for the transfer. *See* Point IV(B), *supra*. Accordingly, DK LIPA's claims under NYDCL §§ 273-75 must be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint, with prejudice, as against all Defendants, and award such other and further relief as the Court deems just and proper.

Dated: Uniondale, New York
November 24, 2020

FARRELL FRITZ, P.C.

By: _s/ James M. Wicks_

James M. Wicks
Kathryn C. Cole
Paige D. Bartholomew
*Attorneys for Defendants Project NY, LLC,*
*Thomas Falz, Ulrich Falz, and Markus Falz*
400 RXR Plaza
Uniondale, New York 11556
(516) 227-0700

GANFER SHORE LEEDS & ZAUDERER LLP

By: _s/ Craig S. Kesch_

Craig S. Kesch
Dawn M. Wilson
*Attorneys for Defendant MISF Solar, LLC*
360 Lexington Avenue
New York, New York 10017
(212) 922-9250

LOUIS FOGEL & ASSOCIATES

By: _____s/ Louis Fogel_____
    Louis Fogel
    *Attorneys for Defendants Mastic Industrial Solar,*
    *LLC, Gerald Rosengarten, Howard Rosengarten,*
    *Sion Sohayegh and Bijoun Kaypor*
    75 Wall Street, Suite 33-A
    New York, New York 10005
    (212) 944-1580

FF\9986573.1